OPINION OF THE COURT
Arthur W. Lonschein, J.
This motion brings into question the right of the defendants’ insurer, Group Council Mutual Insurance Company (Group Council), to issue an undertaking to stay the execution of a $700,000 medical malpractice judgment on appeal. The defendants include LaGuardia Medical Group, P. C., an important provider of health care to many residents of Queens and neighboring counties. Since the plaintiffs have issued restraining notices against LaGuardia Medical Group’s bank accounts, the matter will have a significant impact on its ability to function. Recognizing this impact, the court has issued a temporary restraining order, allowing LaGuardia Medical Group to operate in the regular course of business in the interim.
Group Council has filed two undertakings, to which the plaintiffs have made exceptions. The exceptions are directed to *161 the form of the undertaking and to Group Council as the surety on the undertaking. There are two motions now before the court. The first motion (No. 52) is to justify the first undertaking. The second motion (No. 53) is to vacate or modify the restraining notice, to find the surety sufficient as to the second undertaking, and to impose sanctions on plaintiffs’ counsel. The motions are consolidated for disposition. For the reasons stated below, No. 52 is denied, and No. 53 is granted only to the extent that a hearing shall be held as to the justification of the undertaking filed on or about January 5, 1995.
The facts must be set forth in greater detail. The verdict was rendered on October 27, 1994, and the judgment with notice of entry was served on November 22, 1994. No motion for a stay of execution of the judgment has been made. On November 29, 1994, the defendants served a notice of appeal. At that time no steps were taken by them or their insurer to secure a stay without court order, as allowed by CPLR 5519, and no motion was made for a stay, either here or in the Appellate Division.
On December 16, 1994, an undertaking was filed with regard to the defendant Kiamzon only. This was rejected by plaintiffs’ counsel on December 19, 1994 on the grounds that it did not cover all of the defendants. On December 20, 1994, information subpoenas and restraining notices were served on various banks by the plaintiffs’ counsel. These included the restraining notices at issue herein. The restraining notices went to the defendant LaGuardia Medical Group only, and not to the individual defendant or LaGuardia Hospital.
The notice of motion to justify that undertaking (motion No. 52) was served on December 21, 1994, returnable January 17, 1995.
A second undertaking was filed on or about January 5, 1995. This ran in favor of all of the defendants, rather than the individual defendant only. The condition of this undertaking was that Group Council "do hereby undertake the sum of $704,451.84 that if, on appeal, the judgement [sic] appealed from or any part of it is affirmed, or the appeal is dismissed, defendants shall pay the amount directed to be paid by the judgement [sic] or part of it as to which the judgement [sic] is affirmed with interest thereon from this date on which such judgement [sic] was entered.”
The undertaking was accompanied by an acknowledged *162 statement of Group Council’s president that the Superintendent of Insurance has issued a certificate to Group Council that it is qualified to become surety on bonds or undertakings, and that the certificate has not been revoked. The Superintendent’s certificate itself has not been shown to the court and apparently no copy thereof was filed with the undertaking. A financial statement was filed with the undertaking, however. This financial statement shows that Group Council’s liabilities exceed its assets by more than $33,000,000. That Group Council is insolvent is not disputed on this motion.
The plaintiff rejected the second undertaking on January 5, 1995. The grounds for the rejection included Group Council’s insolvency as well as two alleged technical defects in the language of the undertaking. The first defect is the omission from the undertaking of a description of the nature of the policy and the amount of coverage. The plaintiff claims that this is required by CPLR 5519 (b) (1). The second claim of defect is to the condition of the bond, which undertakes that the defendants, but not the insurer, will pay if the judgment is affirmed or the appeal dismissed. The plaintiff claims that this, too, is required by CPLR 5519. Plaintiff’s objections on these grounds are apparently based on their mistaken belief that the undertaking must conform to CPLR 5519 (b), whereas the controlling provision is CPLR 5519 (a).
There is no automatic stay of the execution of a civil judgment which comes into effect merely by virtue of the filing of a notice of appeal, as claimed by the defendants’ attorney. Rather, there is provision for a stay which comes into effect without a court order, but only after the judgment debtor has taken certain affirmative steps, set forth in CPLR 5519 (a). In the case of a money judgment, this involves an undertaking. The defendants have filed an undertaking which they believe is in conformity with this provision.
Where the action is defended by an insurer, and where the judgment is larger than the policy limits, a stay may yet be obtained, pursuant to CPLR 5519 (b). This subsection is entitled "Stay in action defended by insurer”, but applies only to cases of inadequate insurance. The stay will be up to the limits of the policy, upon the filing of a sworn statement by an officer of the insurer as to the nature of the policy and the coverage afforded by it, and an undertaking to pay up to the policy limits, plus costs and interest, in the event of an affirmance. The balance of the judgment may be stayed by the *163 posting of an undertaking by the insured, as provided in CPLR 5519 (a).
Where, as here, there is no claim by the insurer that the claim exceeds the policy limits, CPLR 5519 (b) is inapplicable, and CPLR 5519 (a) controls. Therefore, plaintiffs’ objection to the undertaking based upon the lack of a statement regarding the policy is ill-founded. The undertaking need only comply with CPLR 5519 (a), which does not require such a statement.
The plaintiff also objects to the undertaking on the ground that it pledges that the judgment debtors, but not the insurer, will pay the judgment if affirmed. The condition of the undertaking under CPLR 5519 (a) (2) is that the appellant will pay so much of the judgment as is affirmed, which is precisely what the present undertaking states. The reference in CPLR 5519 (a) to a "moving party” refers not to an insurer posting the undertaking, but to the situation where the person seeking the stay cannot appeal as of right, but has moved for leave to appeal. Thus, plaintiffs’ objections as to the form of the undertaking are both invalid.
Plaintiff’s most basic objection is to Group Council’s right to act as the surety under any circumstances. Since this insurer is insolvent, plaintiffs claim that it has no authority to file any undertakings. Pursuant to CPLR 2502, any "insurance company authorized to execute the undertaking within the state” is an acceptable surety. Further, where the surety presents a certificate of qualification issued by the Superintendent of Insurance, pursuant to Insurance Law § 1111 (b)-(d), the certificate "shall” be accepted in lieu of justification (CPLR 2507 [a]). The terms of the certificate are set forth in Insurance Law § 1111 (b) (2). It must state the insurer’s capital and surplus, and that such capital and surplus complies with the requirements of the Insurance Law. The certificate must further "indicate the limitation upon the amount of a single risk which such company is authorized to assume.” The certificate, or a copy certified by the Superintendent, are conclusive evidence of the insurer’s qualification and sufficiency as surety, and relieves the insurer of the obligation of justifying the undertaking. (Insurance Law § 1111 [c]; CPLR 2507 [a].) It has been held that a certificate of the insurer’s solvency is conclusive on the court to the extent that even when presented with facts which raise the question, the court may not independently inquire into the insurer’s solvency (Matter of Landau, 230 App Div 308, appeal dismissed 255 NY 567; see *164 also, Schlesinger v Kaufman, 233 NYS2d 918; but see, Dwyer v Nicholson, 154 Misc 2d 123).
In this case the Superintendent’s certificate has not been shown to the court, nor was it filed with the undertaking. It is the Superintendent’s certificate alone which is entitled to conclusive effect. Neither the plaintiff nor the court are required to rely on the insurer’s president’s certificate that he has the Superintendent’s certificate. This is doubly true where, as here, the insurer is admittedly insolvent and there is a substantial question as to its right to issue this undertaking and to its right to a Superintendent’s certificate.
This substantial doubt comes from the provisions of Insurance Law § 1115, which states that "Except as otherwise provided in this chapter, no insurer doing business in this state shall expose itself to any loss on any one risk in an amount exceeding ten percent of its surplus to policyholders.” Here, it is conceded by the insurer that it is insolvent and has no surplus to policyholders. Plaintiff contends that the insurer is therefore precluded from issuing the undertaking.
Insurance Law § 1115 (b) makes several exceptions to this rule, one of which is for "financial guaranty risks.” Counsel for the defendants states that this undertaking is "clearly” a financial guaranty risk and that the limitations of Insurance Law § 1115 do not apply. The conclusion, however, is clearly to the contrary: this undertaking is not a financial guaranty risk within the meaning of the Insurance Law. As used in the Insurance Law, financial guaranty insurance refers to specific categories of risks, extensively defined in Insurance Law § 6901. The risks include the failures of obligors on debt instruments, changes in price levels, interest or exchange rates, and the like. It is difficult to imagine risks further removed from this medical malpractice appeal. Moreover, financial guaranty insurance may only be issued by specifically licensed insurers (Insurance Law § 6904), and there is no showing that Group Council Mutual has such a license.
Counsel for the defendants points out, further, that the Legislature has seen fit to issue a moratorium on the Superintendent’s liquidation of insolvent medical malpractice carriers. This does not preclude the exercise of his discretion in the issuance of certificates pursuant to Insurance Law § 1111 (b) (2). Whether or not this insurer is subject to liquidation, the Superintendent has the discretion to issue or withhold the certificate of qualification.
*165 Therefore, in the absence of the Superintendent’s certificate, the court must conclude that the exception made by the plaintiffs to the undertaking is neither frivolous nor unwarranted, and that the surety on the undertaking has not shown sufficient evidence to justify it. Until it is justified, the restraining notices may not be vacated.
It must be recognized, of course, that the mere failure of Group Council to produce the Superintendent’s certificate up to this time does not mean that it does not possess one. Therefore, a hearing shall be held before me on February 16, 1995, at which time Group Council may produce the certificate, or a copy thereof certified by the Superintendent of Insurance, or otherwise show proof to justify the undertaking. If the insurer intends to produce such a certificate, a copy thereof must be served on plaintiffs’ counsel not later than February 14, 1995. The temporary restraining order shall remain in effect pending the hearing.
The court has reached these conclusions only with the greatest reluctance. The claim by the defendants, that the restraining notices have seriously impeded the ability of LaGuardia Medical Group to provide medical care, is a serious concern, which inclines the court strongly towards vacating the notices. If, however, the facts are that it has given negligent treatment, to the harm of Queens residents, and then is unable to give an adequate undertaking to secure payment of the resulting judgment, the conclusion must be that it presents a danger to the public, and must not be given the benefit of a stay of judgment.
If, at the hearing, the Superintendent’s certificate is produced, or the undertaking is otherwise justified, the restraining notices will be vacated. If not, the court will entertain arguments as to lifting the temporary restraining order and enforcing the restraining notices in the entirety.